IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OLISAEMEKA O.,[1] ) | |
| ) | |
|     Plaintiff, ) | |
| ) | No. 19 C 5766 |
| v. ) | |
| ) | Magistrate Judge |
| ANDREW SAUL, Commissioner of ) | Maria Valdez |
| Social Security, ) | |
| ) | |
|     Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Olisaemeka O.'s claims for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 12] is granted in part and denied in part.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

## BACKGROUND

### I. PROCEDURAL HISTORY

On September 20, 2016, Plaintiff filed a claim for DIB, alleging disability since December 15, 2015 due to Crohn's disease. The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 30, 2018. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On September 27, 2018, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 15, 2015. At step two, the ALJ concluded that Plaintiff had the severe impairment of Crohn's disease. The ALJ concluded at step three that Plaintiff had no impairment or combination of impairments that met or medically equaled a Listing. Before step

2

four, the ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform sedentary work with the following additional limitations: never climbing ladders, ropes, or scaffolds; occasionally stooping and crawling; and no more than occasional exposure to hazards. The ALJ further determined that Plaintiff's work must be limited to simple, routine, and repetitive tasks in light of his pain; he must have the ability to alternate positions from sitting to standing for one to two minutes every thirty minutes while on task; and he needed ready access to a washroom.

At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a cook, sorter, server, and barista. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the Plaintiff

3

presently unemployed? (2) Does the Plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the Plaintiff unable to perform her former occupation? and (5) Is the Plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the Plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The Plaintiff bears the burden of proof at steps 1-4. *Id.* Once the Plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the Plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.     JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even

4

in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a Plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful

5

appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III. ANALYSIS

Plaintiff argues that the ALJ's RFC determination did not adequately account for all of his limitations, specifically the various effects of his symptom flares on work-related activity. The RFC accounted for Plaintiff's dizziness and fatigue by limiting him to tasks that do not involve climbing ladders, ropes or scaffolds, or more than occasional exposure to hazards; due to concentration difficulties caused by pain, the ALJ limited him to simple routine work; and requiring ready access to a restroom was said to accommodate Plaintiff's need to use the facilities with unpredictable frequency.

The ALJ's decision acknowledged that Plaintiff had a past history of severe Crohn's disease, requiring two bowel resection surgeries, a fecal transplant

6

procedure, and numerous hospitalizations throughout 2016. The ALJ, however, focused on Plaintiff's improvement after May 2017, when he began receiving Remicade infusions as often as every four weeks, and noted that Plaintiff's condition was described as being in endoscopic remission in February 2018. Plaintiff did not require further surgery and had only two hospitalizations after starting Remicade treatment, and he generally reported improved symptoms, while continuing to suffer from episodic flares.

Plaintiff testified that he continued to have flares on average once a month, for as long two to three weeks at a time. During the flares, he experienced severe pain and needed to use the bathroom eight or more times per day unpredictably, often with little warning. He claimed that he did not go to the hospital for his flares as much as he had in the past because he learned what to expect and how to handle it on his own.

A medical source statement provided by Dr. Pekow, Plaintiff's treating gastroenterologist, opined that Plaintiff experienced pain sufficient to occasionally interfere with his attention and concentration, he would need approximately eight unscheduled restroom breaks in a workday, and he could be expected to miss work approximately two days each month. The ALJ gave little weight to Dr. Pekow's opinion that Plaintiff would be absent two days per month, but she did not challenge the conclusion that Plaintiff would need to use the restroom approximately eight times per day.

The Court concludes that the ALJ's RFC determination was not adequately supported with respect to Plaintiff's expected restroom usage. The relevant hypothetical question posed by the ALJ to the VE was whether work existed for a person of Plaintiff's age, skills, and other limitations, who also "needed access to the wash room." (R. 56.) The VE testified that there would be jobs available for that person.

However, the VE also testified that there would be no jobs available to a person who is off task fifteen percent of the time. Plaintiff would be off task for more than fifteen percent of the workday if he had an average of eight unscheduled restroom breaks per day lasting nine minutes each. The ALJ thus needed to determine the total amount of break time Plaintiff required. *See Richard K. v. Saul*, No. 18 C 7316, 2020 WL 1986985, at *4-5 (N.D. Ill. Apr. 27, 2020) (holding that "the ALJ erred by not identifying what break duration would be supported by the record" when the length of breaks was relevant to the disability finding) (citing *Sikorski v. Berryhill*, 690 F. App'x 429, 433 (7th Cir. 2017)) (unpublished decision); *Manker v. Berryhill*, No. 16 C 10704, 2017 WL 6569719, at *4 (N.D. Ill. Dec. 22, 2017) ("The issue of the frequency and duration of Claimant's bathroom breaks . . . is highly relevant to the denial of benefits."). The RFC's inclusion of a provision that Plaintiff have "ready access to a washroom" is "distinct from the question of whether a claimant needs (a) unexpected bathroom breaks ... and/or (b) bathroom breaks that may exceed the number or duration of normal breaks during the workday." *Manker*, 2017 WL 6569719, at *4 (citation and internal quotation omitted).

8

The Commissioner counters that the ALJ was not required to explore the length of time of Plaintiff's anticipated breaks; instead, it was Plaintiff's burden to present evidence that his breaks would take him off task for a specified amount of time. But Plaintiff did not need to testify that the breaks would take an unusually long time to place at issue the total time off-task. The ALJ accepted evidence that Plaintiff needed at least eight unscheduled breaks per day. If those eight unscheduled breaks took Plaintiff off task for an average of only nine minutes, that would account for fifteen percent of the workday. If there were more than eight breaks, then less than nine minutes per visit would exceed the allowable threshold. The matter therefore must be remanded so that the ALJ can "determine the amount and length of breaks Plaintiff will require during a work day and include such information in Plaintiff's RFC and the hypotheticals posed to the VE." *Shewmake v. Colvin*, No. 15 C 6734, 2016 WL 6948380, at *12 (N.D. Ill. Nov. 28, 2016)

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 12] is granted in part and denied in part. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**                  **ENTERED:**

**DATE:**     **March 1, 2021**                _____
                                                                           **HON. MARIA VALDEZ**
                                                                           **United States Magistrate Judge**